349 P.2d 123

**William M. ROSS, Claimant, Plaintiff-Appellant,**

v.

**MARBERRY & COMPANY, Inc., Employer, and Maryland Casualty Company, Insurer, Defendants-Appellees.**

No. 6606.

Supreme Court of New Mexico.

Jan. 29, 1960.

Rodey, Dickason, Sloan, Akin & Robb, James C. Ritchie, Albuquerque, for appellees.

McGHEE, Chief Justice

This was a claim for compensation brought under the provisions of the New Mexico Workmen's Compensation Act for injuries sustained when appellant's car swerved off the road and overturned as he was on his way to work.

The case was tried on appellant's deposition and the facts contained therein were undisputed. On the basis of this testimony the trial court ordered the claim dismissed on the ground that appellant's injuries did not result from an accident arising out of and in the course of his employment.

The appellant was employed by appellee as a carpenter. His normal working day began at 8:00 a. m. On the afternoon of the day prior to the accident, however, appellee directed him to report for work the next day a little earlier than usual for the purpose of accomplishing the repair and adjustment of a door which was not working properly at one of appellee's model homes so that the house would be open for inspection by prospective buyers before 8:00 a m., and so that appellant's helpers would not be idle while he performed this task. In order to complete this job before 8:00 a. m., the appellant was obliged to leave his home 25 minutes early.

Wilson, Ahern & Montgomery, Albuquerque, for appellant.

Since appellant's tools were always kept at 1308 Valencia Dr., N.E., the route he took from his home in Los Lunas to Albuquerque was exactly the same as on any other day. He intended to pick up his tools and then proceed to the model house. As he traveled along his usual route, a mechanical failure caused his pick-up to swerve off the road and overturn, severely injuring him.

Appellant's employment began when he arrived at work. He was not reimbursed for traveling expense nor was he paid overtime when he began work early or ended it late. He ordinarily was paid for extra time worked by what in effect amounted to an exchange of time at the other end of the working day.

The statutory language pertinent to this case is as follows:

"The right to the compensation provided for in this act * * *, shall obtain in all cases where the following conditions occur: * * * (b) Where, at the time of the accident, the employee is performing service arising out of and in the course of his employment. * * *" § 59–10–6, 1953 N.M. S.A.

"* * * injuries to workmen, * * * shall not include injuries to any workman occurring *while on his way to assume the duties of his employment or after leaving such duties, * * *.*"

§ 59–10–12(*l*), 1953 N.M.S.A. (Emphasis added).

The latter provision incorporates into our statutes the so-called "going and coming" rule.

This rule is subject to an exception, however. This is stated in 1 Campbell on Workmen's Compensation 173, as follows:

"Where an employee is requested by his employer to return and do 'a service outside his regular duty,' the sole purpose of which was to help his employer in the latter's business, a different rule applies, and the employee is then on a special errand. The special request for unusual service is the decisive factor which brings the employee, throughout the entire trip to and from the place of business, in the course of rendering a service for the employer."

With the foregoing in mind then, the issue decisive of this appeal may be stated thus: Does the mere fact that appellant, at the request of his employer, departed twenty-five minutes early for work and his usual destination, following his usual route, in order to accomplish a task which was one of his regular duties, constitute a "special errand" which takes him out of the operation of the "going and coming" rule?

In an effort to elicit an affirmative answer to this question appellant cites several

cases from other jurisdictions which have dealt with similar fact patterns.

The first case on which appellant heavily relies is Cavness v. Industrial Commission, 1952, 74 Ariz. 27, 243 P.2d 459. Cavness was employed by the State of Arizona as secretary of the Livestock Sanitary Board. His office hours were set by statute at 9:00 a. m. to 5:00 p. m. on weekdays and 9:00 a. m. to 1:00 p. m. on Saturday. "He received numerous telephone calls at his home after office hours and was required to expedite the business of the Sanitary Board regardless of the hour. In short, according to the testimony of all members of the Sanitary Board, he was subject to twenty-four hour call and expected to handle all matters pertaining to the Board's functions."

On the morning of the accident, Cavness left his home an hour earlier than usual in order to deliver certain documents to one of his inspectors. On his way to his office he was involved in a collision and killed. The court held that he was entitled to compensation.

Although there is an obvious similarity between the facts of this case and the one at bar, closer examination reveals a crucial distinction. As the court stated in that case:

"* * * the trip was made in order to discharge a duty which the board required and expected him to perform outside of and in addition to the office hours required of him * * *."

Cavness' office hours were set by statute and he was required to maintain them in spite of special missions like the one in which he was engaged at the time of his death. In the case at bar, appellant was required to work but eight hours a day and if he started early he could quit early. He was neither expected nor required to perform duties in addition to his eight-hour work day.

Another case relied on by appellant is Los Angeles Jewish Community Council v. Industrial Acc. Comm., 1949, 94 Cal.App. 2d 65, 209 P.2d 991. There Mr. Cohn, a part time librarian, was requested to come to the library early that evening to inspect and discuss certain purchases. Mr. Cohn left his home approximately a half hour earlier than usual and was struck by an automobile and killed in the vicinity of the library.

The court affirmed the commission's award of compensation holding that Mr. Cohn was engaged in a "special mission" at the time of his death.

There, however, in addition to the time element the claimant was on his way to perform services which the court held were not part of his usual duties. This very important factor is not present in the case before us since appellant was to perform his usual duties.

The third case on which appellant heavily relies is Fenton v. Industrial Accident Commission, 1941, 44 Cal.App.2d 379, 112 P.2d 763. Late Saturday afternoon, Fenton was given a number of files and instructed to investigate several relief applicants before returning to the office on Monday morning and was killed at a railroad crossing which was situated on the usual route to his office a short distance before he was to turn off for the first interview.

The court unanimously held that Fenton was entitled to compensation. This situation differs from our case in two important respects. First, Fenton was paid mileage by his employer and Ross was not; secondly, Fenton was not actually going directly to his usual destination, i. e. his place of business, while Ross was going directly to the place where his tools were kept as he did every day.

All of the cases cited by appellant as authority for holding that leaving for work at an earlier hour than usual constitutes an exception to the "going and coming" rule differ from the case at bar in that they contain one or more factors in addition to the time element.

In Chernick's Case, 1934, 286 Mass. 168, 189 N.E. 800, the court dealt directly with the effect of leaving home at an earlier than usual hour as in itself constituting a "special mission."

Chernick was an account collector for an installment furniture house. He normally made collections during the day, returned that evening to the office, turned in the proceeds and obtained account cards for the next day's collections. On the day before he was killed, Chernick failed to return to the office in the evening and was ordered by his employer to leave his house earlier the next day in order to return some change to a customer and to perform the duties not completed the previous day. As he proceeded along his usual route, and before he reached the point where he would have turned off his regular route to the office to return the change, he was involved in the fatal collision.

The court held that Chernick was not engaged in the business of his employer at the time of the accident and was not entitled to compensation and further said:

"Nor do we think the order to leave 'earlier in the morning and take care of these (unperformed) duties' created a special employment * * *."

Voehl v. Indemnity Ins. Co., 288 U.S. 162, 163, 53 S.Ct. 380, 383, 77 L.Ed. 676, 87 A.L.R. 245, was an action for compensation by an injured employee brought under the Longshoremen's and Harbor Workers' Compensation Act, U.S.C.A. Title 33, §§ 901–950.

The workman was injured while on his way to the employer's warehouse for the purpose of clearing it of debris in accordance with his duties, and while so engaged

on Sunday the terms of his employment covered the period of service from the time he left home until his return, his compensation for this service being at an agreed rate per hour for the entire time with an allowance for his transportation. Chief Justice Hughes stated:

"While service on regular hours at a stated place generally begins at that place, there is always room for agreement by which the service may be taken to begin earlier or elsewhere. Service in extra hours or on special errands has an element of distinction which the employer may recognize by agreeing that such service shall commence when the employee leaves his home on the duty assigned to him and shall continue until his return. An agreement to that effect may be either express or be shown by the course of business. In such case the hazards of the journey may properly be regarded as hazards of the service, and hence within the purview of the Compensation Act."

It is clear that absent the agreement set out above compensation would have been denied, and the rationale of the case is authority for denying compensation here.

In Church v. Ingersoll, 10 Cir., 1956, 234 F.2d 176, it was held that where a ranch hand merely returned to his employer's ranch on Sunday to complete a regular task which he had not finished on Saturday, and the only resemblance to a special errand was the fact that such employee did not ordinarily work on Sunday, the special errand exception was inapplicable to third parties' actions against the ranch hand who became involved in an accident while driving his own truck home from the ranch on Sunday even if full sweep is given to the special errand exception to the so-called coming and going rule as such exception is applied in workmen compensation cases.

We believe the three cases last cited afford ample authority for holding that merely leaving for work at an earlier time is not sufficient to constitute a "special mission" and avoid the pronouncement of the "going and coming" rule as embodied in § 59-10-12(l), 1953 N.M.S.A.

We have frequently held that our Workmen's Compensation Act is to be liberally construed in favor of the claimant. Gonzales v. Chino Copper Co., 1924, 29 N.M. 228, 222 P. 903; Stevenson v. Lee Moor Contracting Co., 1941, 45 N.M. 354, 115 P.2d 342; Lipe v. Bradbury, 1945, 49 N.M. 4, 154 P.2d 1000. However, as we also held in Martin v. White Pine Lumber Co., 1930, 34 N.M. 483, 284 P. 115, liberal construction does not mean a total disregard for the statute, or repeal of it under the guise of construction.

We therefore hold that appellant's injuries did not result from an accident arising out of and in the course of his employ-

410

ment and that the trial court did not err in dismissing his claim.

The judgment is affirmed and it is so ordered.

COMPTON, CARMODY and MOISE, JJ., concur.

CHAVEZ, J., not participating.